IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KRISTINE J. KELLUM,

    Plaintiff,

v.                                                                    No. 1:14-cv-00163 RB/CG

BERNALILLO COUNTY, THE BERNALILLO
COUNTY COMMISSION, CORRECTIONAL
HEALTHCARE COMPANIES, INC., TIMOTHY
TRAPP, KAAKI GARNER, STEPHANIE BREEN,
TAILEIGH SANCHEZ and ADELA MARES,

    Defendants.

## DEFENDANTS TIMOTHY TRAPP, KAAKI GARNER, STEPHANIE BREEN TAILEIGH SANCHEZ AND CORRECTIONAL HEALTHCARE COMPANIES' RESPONSE IN OPPOSITION TO PLAINTIFF KELLUM'S MOTION FOR SANCTIONS

COMES NOW Timothy Trapp, Kaaki Garner, Stephanie Breen, Taileigh Sanchez and Correctional Healthcare Companies, Inc., ("CHC Defendants"), by and through their Counsel of Record, Park & Associates, L.L.C. (Alfred A. Park and Lawrence M. Marcus), and hereby submit their Response in Opposition to Plaintiff Kellum's January 12, 2017 Motion for Sanctions. In Support of their Response, CHC Defendants state as follows:

### I.    INTRODUCTION

Plaintiff Kellum seeks this Honorable Court to impose Rule 11 sanctions, because CHC Defendants filed a Motion for Summary Judgment on December 7, 2016, that seeks a definitive ruling upon a paramount[1] issue that the Court itself previously noted was of an unclear nature. *See* [Doc. 242 and Doc. 251]. CHC Defendants had previously moved for partial summary

---

[1] *See Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) ("Our first task in an § 1983 suit alleging a constitutional violation is "to isolate the precise constitutional violation…." The choice of amendment matters.").

1

judgment on November 20, 2014, seeking this Honorable Court to rule that no genuine issue of material fact existed establishing that CHC medical personnel were deliberately indifferent in violation of the Eighth Amendment. *See* [Doc. 75]. That previous motion was based upon the factual allegations contained in Plaintiff's Complaint. At that time, this Honorable Court was unable to definitively determine Plaintiff Kellum's status as being that of a pretrial detainee or adjudicated prisoner. As this Honorable Court stated:

> Given that Plaintiff's status as a pretrial detainee or adjudicated prisoner is unclear, the particular constitutional provision governing Plaintiff's claims is not clear. The record indicates Plaintiff's probation officer transported her to the Metropolitan Detention Center based on a probation violation, but it (sic) unclear whether the probation revocation had been <u>adjudicated.</u>

June 9, 2015 Order [Doc. 164] at 10 (emphasis added).

Even though the Court noted that the issue was "unclear whether the probation revocation had been adjudicated," Plaintiff Kellum now seeks to impose Rule 11 sanctions against CHC Defendants for presenting evidence in an attempt to "clear up" the issue. Plaintiff Kellum has presented a Rule 11 Motion for Sanctions, yet has provided absolutely no evidence to discredit the undisputed material fact that Plaintiff Kellum was booked into MDC on October 17, 2012, without having a due process hearing to formally adjudicate whether she had actually violated her conditions of parole. Nor did Plaintiff Kellum enter a guilty plea that she had actually violated her parole in October 2012. As Plaintiff Kellum herself acknowledges in her Motion for Sanctions: "On October 17, 2012 … No hearing was held…." Motion at 6, ¶ 9.

## II. ARGUMENT AND AUTHORITY

**A.    A Motion for Sanctions Requires Strict Compliance with Rule 11.**

Fed. R. Civ. P. 11(c)(2) states:

A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the

challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service….

The District of New Mexico has held that Fed R. Civ. P. 11 requires "strict compliance" with these provisions in order to grant relief pursuant to a motion for sanctions (should the Court even find the argument has merit and warrants relief). As stated by the Honorable Judge Browning in *Friedlander v. Cook*, 2008 WL 4868073 at *2 (D.N.M. October 4, 2008) (unreported):

> The Court has, in prior cases, required <u>strict compliance</u> with the rule's requirements….Because the moving Defendants have not complied with the rule's requirements, the Court will deny the request for rule 11 sanctions.

*Citing Negrete v. Maloof Distributing L.L.C.*, 2006 WL 4061178 (D.N.M. October 17, 2006) (unreported) (emphasis added).

In the present case, Plaintiff Kellum asserts that she emailed the Motion for Sanctions to counsel for CHC Defendants on December 22, 2016. *See* Motion for Sanctions at 9, ¶ 46 [Doc. 275]. While it is true that Plaintiff Kellum emailed a *version* of a Motion for Sanctions on December 22, 2016, it is not the version currently pending before this Honorable Court. The Motion for Sanctions filed on January 13, 2016 contains new allegations of the "specific conduct that allegedly violates Rule 11(b)." *See* Motion for Sanctions [Doc. 275] and Exhibit 1 (the previously emailed/served version of the Motion for Sanctions). After piecing together the two versions of the Motion for Sanctions (which are in two different formats), it is apparent that Plaintiff Kellum incorporated new contentions, such as:

> 16. When participants such as Kristine Kellum enter into the Drug Court program, they sign an agreement, the terms of which set out automatic sanctions for a violation of the conditions of their probation, including remand to MDC without a hearing. By signing the agreement, the Drug Court participants acknowledge that sanctions may be imposed against them without a hearing.
> …
>
> 37. The especially unreasonable and vexatious nature of Defendants' Motion is illustrated by the facts that:

3

> A. In the 3/19/14 Joint Status Report and Provisional Discovery Plan (Doc. 16), Defendants stipulated and agreed "that this case is governed under 42 U.S.C § 1983, the Eighth Amendment to the United States Constitution; the New Mexico Tort Claims Act (applicable to the Bernalillo County Defendants), and New Mexico common law (applicable to Defendant CHC)."
>
> B. In the 2/16/15 Pretrial Order (Doc. 136), subject matter jurisdiction was uncontested, there were at that time five pending motions filed by CHC and Defendants indicated they may file "numerous dispositive motions, including a motion for qualified immunity and to stay proceedings."
>
> C. In the 8/29/16 Joint Status Report and Provisional Discovery Plan (Doc. 220), Defendants stipulated and agreed "that this case is governed under 42 U.S.C § 1983, the Eighth Amendment to the United States Constitution; the New Mexico Tort Claims Act and New Mexico common law."

*See* Motion for Sanctions at 3-4, 7 [Doc. 275] and Exhibit 1 to the Motion for Sanctions.

Given that Plaintiff Kellum filed a different version of the Motion for Sanctions (along with completely new allegations) on January 13, 2017 than the version she served with CHC Defendants on December 22, 2017, this Honorable Court should deny the Motion for failing to comply with Fed. R. Civ. P. 11(c)(2). S*ee Friedlander,* 2008 WL 4868073 at *2 (D.N.M. October 4, 2008) (unreported) (requiring "strict compliance with the rule's requirements").

**B.    CHC Defendants' Motion for Summary Judgment Seeks a Definitive Ruling Upon a Previously "Unclear" Issue of Paramount Importance and is Not Being Used to Multiply the Proceedings in an Unreasonable and Vexatious Manner.**

As stated in *Vesco v. Snedecker*, 236 F. Supp. 2d 1272, 1276 (D.N.M. 2002):

Three substantial requirements must be met before liability may be imposed under § 1927:(1) a multiplication of proceedings by an attorney or other person; (2) conduct that can be characterized as unreasonable and vexatious; and (3) a resulting increase in the cost of the proceedings. *Campana v. Muir,* 615 F.Supp. 871, 874 (M.D.Pa.1985), aff'd, 786 F.2d 188 (3rd Cir.1986), *Hidahl v. Gilpin County Dep't of Soc'l Serv.,* 699 F.Supp. 846, 849 (D.Colo.1988).

Again, CHC Defendants' Motion for Summary Judgment seeks to "clear up" an issue this Honorable Court had previously noted was of an "unclear" nature. The undisputed fact that Plaintiff Kellum did not receive a due process hearing is of paramount importance for the present

4

case, as it is the due process hearing that changes an individual's status from that of a "pretrial detainee" to that of an "adjudicated prisoner" for purposes of a § 1983 analysis. As the United States Supreme Court stated in *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 2979, 2983 (1983): "Because there had been <u>no formal adjudication of guilt</u> against Kivlin at the time he required medical care, the Eighth Amendment has no application." (emphasis added); *see also Kretek v. Board of Commissioners of Luna County*, 2013 WL 12039991 at *6 (D.N.M. 2013)(unreported)("The Tenth Circuit has explained that when a plaintiff is detained before an adjudication of guilt … the Fourth nor Eighth Amendment applies…."); *Chavez v. Board of County Commissioners of Sierra County*, 899 F. Supp. 2d 1163, 1186 (D.N.M. 2012)("[W]hen government officials hold an individual in confinement before the formal adjudication of that individual's guilt, the Eighth Amendment does not regulate….").

Plaintiff Kellum must plead the correct Amendment, as the rights attendant under a prisoner's § 1983 claim in the context of medical care are supplied under either the Eighth Amendment or the Fourteenth Amendment—not both. To quote the Honorable Judge Browning (in his citation of *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983)):

> "The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."

*Chavez*, 899 F. Supp. 2d at 1185.

Despite Plaintiff Kellum's contentions that somehow CHC Defendants have "waived" any objection to the requirement that she plead the correct Fourteenth Amendment standard, the fact remains that a Complaint which alleges the incorrect standard is invalid on its face, because § 1983 is not the source of the individual's rights. *Chavez*, 899 F. Supp. 2d at 1185 ("A § 1983 claim that brings an allegation with the wrong underlying constitutional amendment, therefore, is invalid on its face and must be dismissed…."); *Graham v. Connor*, 490 U.S. 386, 93-94 (1989)

5

("As we have said many times, § 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'").

Despite Plaintiff Kellum's implication to the contrary, a Defendant cannot somehow "waive" the facial invalidity of a § 1983 claim that presents the incorrect constitutional amendment. In other words, if a § 1983 claim is invalid on its face, then—ab initio—there was no claim under which a waiver could apply, because it is the (correct) constitutional amendment that is the source of the substantive rights that Plaintiff is seeking to enforce. As stated in *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 908 (10th Cir. 1974):

> The party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction does exist, *Wilshire Oil Co. of Texas v. Riffe,* 409 F.2d 1277 (10th Cir. 1969), but, since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence. *City of Lawton, Okla. v. Chapman,* 257 F.2d 601 (10th Cir. 1958). Thus, the party invoking the federal court's jurisdiction bears the burden of proof. *Becker v. Angle,* 165 F.2d 140 (10th cir. 1947).
>
> If the parties do not raise the question of lack of jurisdiction, it is the duty of the federal court to determine the matter sua sponte. *Atlas Life Insurance Co. v. W. I. Southern Inc.*, 306 U.S. 563, 59 S.Ct. 657, 83 L.Ed. 987 (1939); *Continental Mining and Milling Co. v. Migliaccio,* 16 F.R.D. 217 (D.C. Utah 1954). <u>Therefore, lack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation.</u> *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968); *Reconstruction Finance Corp. v. Riverview State Bank,* 217 F.2d 455 (10th Cir. 1955).

(emphasis added).

As noted in both Defendant CHC's Motion and Plaintiff Kellum's Response, a due process hearing was held on May 31, 2012 regarding her April 2012 probation violation and a due process hearing was held on July 17, 2012 regarding her June 2012 probation violation. *See* Defendant CHC's Motion for Summary Judgment UMF 5 and 6 [Doc. 242]; Plaintiff's Response UMF C and F [Doc. 247]. However, the undisputed fact remains that a due process hearing was never conducted in relation to her October 17, 2012 incarceration for her alleged October 2012

probation violation. As stated in Plaintiff Kellum's Response, "No probation violation hearing was held…." Plaintiff UMF J [Doc. 247]. Regardless of her enrollment in the drug court program, or any provisions of Rule 5-805 NMRA that govern a drug court, the fact remains that a due process hearing was not conducted and Plaintiff Kellum did not enter a plea of guilty; thus, her *status* at that point in time remained similar to that of a pre-trial detainee. In other words, she had not been found guilty via a due process hearing of the alleged probation violation for which she was being held at MDC on October 17, 2012. And "Because there had been no formal adjudication of guilt against [Plaintiff Kellum] at the time [s]he required medical care, the Eighth Amendment has no application." *City of Revere,* 463 U.S. at 2983.

Plaintiff Kellum was at home the morning of October 17, 2012, and by the end of the day she was in custody at MDC—custody that occurred without the benefit of a due process hearing. *See* CHC Defendants' UMF 7 [Doc. 242]. The status of an individual whose liberty has been taken away prior to a due process hearing remains similar to that of a pre-trial detainee for purposes of the Fourteenth Amendment. *See Kretek v. Board of Commissioners of Luna County*, 2013 WL 12039991 (D.N.M. 2013)(unreported); *Montoya v. Newman*, 115 F. Supp. 3d 1263 (D. Colo. 2015). Simply because a parolee has conditions of release imposed upon her does not change the fact that she has a liberty interest at stake when she is remanded to custody. *See Gagnon v Scarpelli,* 411 U.S. 778 (1973); *Morrissey v. Brewer,* 408 U.S. 471 (1972). Instead, Plaintiff Kellum argues that no due process hearing was "required." Plaintiff Kellum argues that she agreed to be placed into the Bernalillo Drug Court program, and as such, agreed to automatic sanctions for alleged violations of her probation conditions. Plaintiff UMF O [Doc. 247]. Regardless of any such agreement (entered into prior to her October 2012 alleged probation violation), the undisputed fact remains that Plaintiff Kellum herself did not receive a due process hearing or enter a guilty plea for the actual alleged violation of her parole conditions.

In fact, this Honorable Court similarly found in *Kretek v. Board of Commissioners of Luna County*, 2013 WL 12039991 (D.N.M 2013 Unreported) that an individual held in a detention center pursuant to a probation violation is properly classified as a pretrial detainee. In determining which constitutional rights applied to Mr. Aparicio pursuant to his estate's claims for wrongful death and excessive use of force, this Honorable Court found:

> In Count II, Plaintiff alleges that Defendants Elford, Chavez, and McGrael used excessive force on Mr. Aparicio while he was a pretrial detainee. Defendants move for summary judgment on this claim and cite to the Fourth Amendment in their initial brief and the Eighth Amendment in their reply brief. Plaintiff opposes the motion and points out that the Fourteenth Amendment standard applies to the excessive force claim.
>
> The record establishes that Mr. Aparicio was arrested and detained in a county detention center for an alleged probation violation and he had not been adjudicated to be in violation of his probation. (Doc. 152-2). The Tenth Circuit has explained that when a plaintiff is detained before an adjudication of guilt "neither the Fourth nor Eighth Amendment applies ... [and] we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities." *See Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010). In that Mr. Aparicio was in pretrial detention on a state probation revocation charge, the due process standard of the Fourteenth Amendment applies.

*Id.* at *6.

Further, in a similar case, the Supreme Court of Nebraska specifically reviewed a drug court termination proceeding and held:

> The majority of other courts considering the issue have determined that participants facing termination from postplea diversion programs, such as the drug court program, are entitled to the same due process protections as persons facing termination of parole or probation. We agree. While restrictions upon the liberty of drug court participants may depend on their individual program plans, participants are not imprisoned, and, like parolees or probationers, they may still do a wide range of things. Participants are generally allowed to live at home and maintain gainful employment. They are allowed to be with family and friends and form the other enduring attachments of normal life, so long as these relationships are not a detriment to their rehabilitation. The termination of the conditional liberty granted drug court participants inflicts a " 'grievous loss' " similar to the loss of parole or probation.

*State v. Shambley*, 795 N.W.2d 884, 281 Neb. 317, 328-29 (2011).

In *Staley v. State*, 851 S.2d 805 (2003), the Florida District Court of Appeal also similarly found that a person cannot prospectively waive her right to a due process hearing for some unknown and uncommitted act that may occur in the future, finding that:

> When the court placed Staley on drug offender probation, it discussed many terms of the drug court contract with him. It specifically told him that his urine would be tested; that he would be required to go to group therapy and a twelve-step program; and that if his urine was positive for drugs, or if he missed a meeting, that would be a violation of the contract…Staley simply could not have knowingly and intelligently waived his right to contest allegations against him without knowing what those allegations were. A probationer can certainly waive his rights to due process and to statutory procedures after they have been implicated. Thus, for instance, once an affidavit of violation has been filed the probationer may elect not to contest it. But we do not believe he can prospectively waive these rights.

In the context of a probation violation, New Mexico Courts have similarly find that removal of liberty interests granted to a parolee necessitate a due process hearing. *See State v. Phillips,* 2006-NMCA-001, ¶ 17, 138 N.M. 730, 126 P.3d 546 (stating that the trial court's finding of a probation violation must be based on verified facts); *In re Bruno R.,* 2003-NMCA-057, ¶ 11, 133 N.M. 566, 66 P.3d 339 ("To establish a violation of a probation agreement, the obligation is on the [s]tate to prove willful conduct on the part of probationer so as to satisfy the applicable burden of proof."); *cf. State v. Sanchez,* 2001-NMCA-060, ¶ 13, 130 N.M. 602, 28 P.3d 1143 (requiring the State to introduce proof which would incline a reasonable and impartial mind to believe that the defendant violated the terms of his or her probation).

Again, CHC Defendants do not dispute that Plaintiff Kellum was placed into custody on October 17, 2012 in order to complete her Addiction Treatment Program. What CHC Defendants dispute is that her *status* on October 17, 2012, changed from that of a person protected under the Fourteenth Amendment to that of a person protected under the Eighth Amendment. Plaintiff Kellum was held in custody—having her previous liberty interests taken away—without having had the benefit of a constitutionally required due process hearing. Thus,

her status remained similar to that of a parolee being held for an alleged probation violation (prior to a due process adjudication), which places her under the Fourteenth Amendment for purposes of a § 1983 claim for damages.

Nor by this Motion are CHC Defendants challenging the constitutionality of Rule 5-805 NMRA—rather, the argument is that a person placed into custody prior to a due process hearing is not a "convicted" person whose § 1983 rights are protected under the Eighth Amendment. When an individual's liberty interests are taken away by the State prior to a due process hearing (such as being held in custody for an alleged probation and/or drug court violation) that individual's § 1983 rights are still governed by the Fourteenth Amendment. It is the due process hearing that changes an individual's status from that of pretrial detainee to that of adjudicated prisoner. *See City of Revere*, 463 U.S. 239 (1983). *Kretek*, 2013 WL 12039991 (D.N.M. 2013)(unreported). A ruling on this issue is also of great importance (state-wide), as there are currently 28 drug courts in operation in New Mexico with thousands of participants. *See* https://twelfthdistrictcourt.nmcourts.gov/drug-court.aspx (New Mexico Twelfth Judicial District Court Website accessed 01/13/2017). Meaning this exact scenario (incarceration without a due process hearing) is bound to come up again, as § 1983 medical care claims in New Mexico courts have recently been increasing exponentially.

Accordingly, given that: (1) this Honorable Court concluded Plaintiff Kellum's status was "unclear"; (2) it is undisputed that Plaintiff Kellum did not receive a due process hearing prior to her incarceration at MDC on October 17, 2012; and (3) the determination of whether an individual's rights are governed by the Eighth or the Fourteenth Amendment is of paramount importance, Plaintiff Kellum's argument in support of Rule 11 sanctions should not be well taken.

Further, given the fact that Plaintiff Kellum purposefully filed a Motion for Sanctions of a different character than the Motion for Sanctions that she served on CHC Defendants (and the fact that CHC Defendants are seeking a definitive ruling on a previously "unclear" paramount issue), attorneys' fees should be awarded to CHC Defendants for the time spent responding to this Motion for Sanctions. *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.")

### III. CONCLUSION

CHC Defendants' Motion for Summary Judgment presents (undisputed) evidence that a due process hearing was not held and seeks a ruling that the Fourteenth Amendment applies to Plaintiff Kellum's claims—an issue that heretofore had been "unclear." Yet Plaintiff Kellum believes that resolution of a previously "unclear" paramount issue somehow justifies the imposition of Rule 11 sanctions.

A due process hearing was not conducted and Plaintiff Kellum did not enter a guilty plea in the matter; thus, her *status* (for purposes of a Fourteenth Amendment analysis) remained similar to that of a pre-trial detainee—she had liberty interests taken away by the State without the benefit of a due process hearing, which places her under the Fourteenth Amendment for purposes of a § 1983 claim. As such, "at the time [s]he required medical care, the Eighth Amendment ha[d] no application." *City of Revere,* 463 U.S. at 2983.

Accordingly, given that: (1) Plaintiff Kellum did not strictly comply with Fed. R. Civ. P. 11 in filing this Motion for Sanctions; (2) this Honorable Court concluded Plaintiff Kellum's status was "unclear"; (3) it is undisputed that Plaintiff Kellum did not receive a due process hearing prior to her incarceration at MDC on October 17, 2012; and (4) the determination of whether an individual's rights are governed by the Eighth or the Fourteenth Amendment is of paramount importance, Plaintiff Kellum's Motion for Sanctions should be denied. CHC

Defendants further seek an award of their reasonable attorneys' fees for responding to the Motion pursuant to Fed. R. Civ. P. 11(c)(2).

WHEREFORE, CHC Defendants respectfully request this Honorable Court enter an order DENYING Plaintiff Kellum's Motion for Sanctions and awarding their reasonable attorneys' fees incurred in responding to the Motion.

>Respectfully submitted,
>
>PARK & ASSOCIATES, L.L.C.
>
>By: /s/ Alfred A. Park
>   Alfred A. Park
>   Lawrence M. Marcus
>   Kevin D. Fowler
>   *Counsel for CHC Defendants*
>   6100 Uptown Blvd. N.E., Suite 350
>   Albuquerque, NM 87110
>   (505) 246-2805

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF filing system to all counsel of record on this __16th__ day of January, 2017.

/s/ Alfred A. Park
Alfred A. Park